COURT OF APPEALS
DECISION
DATED AND FILED

July 15, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2026AP77**

Cir. Ct. No. **2023ME167**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF J.S.:

WINNEBAGO COUNTY,

    PETITIONER-RESPONDENT,

  V.

J.S.,

    RESPONDENT-APPELLANT.

       APPEAL from orders of the circuit court for Winnebago County: MICHAEL D. RUST, Judge. *Affirmed.*

    ¶1    LAZAR, J.[1] Jacob[2] appeals from orders for the extension of his recommitment under WIS. STAT. § 51.20(1)(a)2. and for the involuntary

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

administration of medication under WIS. STAT. § 51.61(1)(g). He asserts that, contrary to **Langlade County v. D.J.W.**, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, the circuit court failed to make specific factual findings of dangerousness with reference to a particular paragraph of § 51.20(1)(a)2. This court concludes that the circuit court made sufficient factual findings to support recommitment, and affirms both orders.

## BACKGROUND

¶2 The circuit court[3] originally ordered Jacob committed to the care and custody of Winnebago County for a period of six months on June 8, 2023. The County filed a Petition for Recommitment on November 7, 2023. The court, after conducting a hearing on November 30, 2023, entered orders of recommitment and the involuntary administration of medication.

¶3 Jacob appealed both of those orders (also on the grounds that the circuit court failed to make specific factual findings of dangerousness) in July 2023. By an opinion, dated March 5, 2025, this court "conclude[d] that the [circuit] court made sufficient factual findings to support commitment" and affirmed. **Winnebago County v. J.S.**, No. 2024AP1333, unpublished slip op., ¶1 (WI App Mar. 5, 2025).

---

[2] This court refers to the subject individual by a pseudonym consistent with WIS. STAT. § 809.19(1)(g), to protect his confidentiality.

[3] The Honorable Daniel J. Bissett issued the initial order of commitment in June 2023. The Honorable Teresa S. Basiliere issued the first recommitment order in November 2023. And, the Honorable Michael D. Rust issued the recommitment and involuntary medication orders in October 2024 that are at issue in this appeal.

¶4 In the meantime, while the previous appeal was pending, the County filed another Petition for Recommitment on October 1, 2024. Dr. Michael Vicente, the County's lead psychiatrist who had evaluated Jacob in 2023, had conducted another examination of Jacob in September 2024. That report was filed with the current Petition.

¶5 The circuit court held a hearing on the Petition on October 29, 2024, at which Vicente and a worker at Jacob's group home, Sean Moore Jr., testified. Moore testified that Jacob broke his foot—shattering his heel—while jumping out of a window at the group home within two months prior to the hearing. Jacob told Moore that he had jumped from a second-floor window because "[h]e wasn't in the right set of mind ... . He was stressed out, he was going through a lot[,]" and that "[h]e didn't want to be there."

¶6 Among his other testimony, Vicente testified that Jacob had a diagnosis of "[u]nspecified schizophrenia spectrum" and agreed that it was a mental illness of "substantial disorder of thought and perception[.]" Jacob had reported auditory hallucinations and paranoid ideation to Vicente. After Jacob had become angry at another group home and damaged some furnishings, he was hospitalized at Winnebago Mental Health Institute. Vicente testified these behaviors were all symptoms of Jacob's mental illness. As to Jacob's dangerousness, Vicente pointed to the attempt to elope and the jump out of the window as well as some threats to staff at the group home, which Jacob had denied. Vicente testified that, based on past history, he believed Jacob would stop medication if he was no longer committed and agreed that Jacob would decompensate and become dangerous if he was no longer medicated. Vicente's expert report was admitted into evidence at the hearing.

¶7      The County argued that it had met its burden of proof to establish that Jacob was dangerous under "the A [s]tandard."

¶8      With respect to dangerousness, the circuit court found that:

> there is a substantial probability that [Jacob] needs care or treatment to prevent further disability. And this is very well evidenced by the testimony both of Dr. Vicente as well as Mr. Moore that if untreated the subject will lack services for his health or safety. Again, I'm making that determination based off of the testimony of Mr. Moore with regards to [Jacob]'s attempt to elope through a second story window and ultimately creating harm - - substantial, severe bodily harm to himself. If left untreated, [Jacob] will suffer severe mental, emotional, or physical harm that will result in the loss of [Jacob]'s ability to function ... independently in the community or the los[s] of cognitive or volitional control over his - - his thoughts or actions. ...
>
> And the Court is also finding that there is no reasonable provision for the individual's care or treatment in the community and that if there are any such services that it is very probable and it - - there is no reasonable probability that [Jacob] will avail himself of these services as he is currently in a facility receiving these services and attempted to elope through a second story window. That is a well-found fact, definitely beyond clear and convincing evidence. And these are manifested both by the - - by [Jacob's] treatment history and his recent acts. And there also - - there is a substantial likelihood based on [Jacob's] treatment record that he would be a proper subject for commitment if treatment services were withdrawn.

¶9      The circuit court entered an order extending, for one year, Jacob's recommitment under WIS. STAT. § 51.20(1)(a)2.a. or b., and e., an order for commitment under § 51.20(1)(a)2.e., and an order for the involuntary administration of medication and treatment. After several motions for extensions

of time by his counsel, Jacob appeals those orders,[4] arguing that the court's factual findings underpinning the court's holding are "unclear."

¶10 The recommitment order at issue in this appeal was extended by a one-year recommitment order and an involuntary medication order, both entered on October 21, 2025. Those orders are the subject of another appeal.

## DISCUSSION

¶11 It is correct that individuals—all individuals—are entitled to fair trials where their liberty interests are properly protected. This is particularly true in civil commitment cases that may uniquely deprive citizens of their personal liberty and restrict their rights by curtailing their ability to select or refuse certain medication and treatment. Both aspects constitute significant restrictions on personal liberty and must be reasonable and withstand constitutional scrutiny. "It is clear that 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Jones v. United States*, 463 U.S. 354, 361 (1983) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)).

### I. Mootness

¶12 First, because the involuntary commitment and medication orders at issue expired on October 29, 2025, and another recommitment order was issued on October 21, 2025, prior to the filing of the notice of appeal, the County contends that this appeal is moot because "its resolution will have no practical effect on the underlying controversy." *Portage County v. J.W.K.*, 2019 WI 54, ¶11, 386

---

[4] Jacob's notice of appeal in this appeal was filed over two months after the October 2025 recommitment hearing.

Wis. 2d 672, 927 N.W.2d 509 (citation omitted). The County asserts that, because of the next and now current 2025 recommitment order, there are no collateral consequences of commitment orders as discussed in *Sauk County v. S.A.M.*, 2022 WI 46, ¶¶22-24, 402 Wis. 2d 379, 975 N.W.2d 162. Finally, the County contends that none of the exceptions to mootness apply. *See J.W.K.*, 386 Wis. 2d 672, ¶12.

¶13     Jacob asserts that, in addition to the firearm restriction in general, citing to *S.A.M.*, 402 Wis. 2d 379, ¶23, "if a committed person succeeds in vacating an expired recommitment order, the fact that the recommitment order no longer exists might influence the reviewing court's weighing of whether restoring gun rights would be consistent with the 'public interest.'" *Id.* (citing WIS. STAT. § 51.20(13)(cv)1m.b.). Thus, Jacob contends this appeal is not moot because the vacation of *this* recommitment order would alter his "'record and reputation' for dangerousness" when considering whether to reinstate gun rights under § 51.20(13)(cv)1m.b. Jacob asserts that the statutory liability for County-paid costs is still grounds to resolve this appeal.

¶14     We "generally decline to reach the merits of an issue that has become moot." *PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶29, 317 Wis. 2d 656, 766 N.W.2d 559. "Mootness is a question of law that this court reviews de novo." *Wisconsin State J. v. Blazel*, 2023 WI App 18, ¶41, 407 Wis. 2d 472, 991 N.W.2d 450.

¶15     While this court acknowledges that our supreme court has determined that mental commitment appeals are not moot based upon "at least two collateral consequences[,]" *S.A.M.*, 402 Wis. 2d 379, ¶20, this court notes that in many cases such consequences are illusory. For instance, the first consequence articulated in *S.A.M.* is that the subject individual is subject to a firearm

prohibition. *Id.*, ¶23. But, as noted in the concurrence/dissent to *S.A.M.*, that ban could be duplicative in some cases, effectively rendering *it* moot. *Id.*, ¶¶41-43 (Ziegler, C.J., concurring in part and dissenting in part). The individual in *S.A.M.* was already subject to a prior firearm ban from an initial commitment that had not been appealed, but the court reasoned that an additional ban could have a "practical effect" (albeit "marginal") if and when a future court considered restoration of gun rights. *Id.*, ¶23. However theoretically possible that effect might be, Jacob's appeal presents a lesser "practical effect" because he was subject to a prior commitment and recommitment order and is bound by those orders' firearm prohibitions. *See* WIS. STAT. § 941.29. Thus, the first collateral consequence may not be applicable in this appeal.

¶16     The second collateral consequence mentioned in *S.A.M.* is that a county may seek to recoup payments from the subject individual that it made to supply recovery care and medication. 402 Wis. 2d 379, ¶24; *see also* WIS. STAT. § 46.10(2). In this case, as in many (if not most), the County has made no indication that it would seek such reimbursement. Nor has Jacob's counsel indicated that the County actually made a financial reimbursement demand.

¶17     A final possible collateral consequence—social stigma—is not asserted by Jacob in this appeal. Perhaps for good reason, since "no Wisconsin court has ever concluded that social stigma alone is a collateral consequence of commitment that will defeat the mootness doctrine." *S.A.M.,* 402 Wis. 2d 379, ¶51 (Ziegler, C.J., concurring in part and dissenting in part).

¶18     As former Chief Justice Ziegler presaged in her concurrence/dissent, "[w]ith no moot appeals in these [commitment] cases, the appellate system will be flooded." *Id.*, ¶38 (Ziegler, C.J., concurring in part and dissenting in part). And,

flooded the system is.[5]   Appellate courts should carefully assess whether a potential collateral consequence truly exists in an expired commitment appeal. Here, Jacob is already subject to a firearm prohibition.  And he has presented no evidence that the County is seeking to recoup payments, if any.  It is his obligation to develop[6] his arguments, including a basis to have his appeal heard.  That being the case, and given that Jacob's commitment expired in October 2025 and a new order was issued that month—long before the first appellate brief was even filed— this court has serious doubts about whether his appeal is not moot.

¶19    If any WIS. STAT. ch. 51 appeal were to be dismissed as moot, this surely would be at the top of the list because the collateral consequences, if any, of the past commitments, as well as, and more importantly, the collateral consequences, if any, of *the most recent commitment* order (also currently under appeal).  Regardless of the potential lack of a viable, nonmoot appeal, this court will still address the merits of this appeal.

## II.  Sufficient factual findings

¶20    To commit someone, while protecting the individual's due process rights, a county must prove, and a circuit court must find, by clear and convincing evidence, that a subject individual meets the same three requirements necessary

---

[5] One-judge appeals in the Wisconsin Court of Appeals (not just WIS. STAT. ch. 51 appeals) have increased from 413 in 2020 (when the first supreme court decision holding appeals of expired mental commitments are not moot was issued in *Marathon County v. D.K.*, 2020 WI 8, ¶25, 390 Wis. 2d 50, 937 N.W.2d 901) to 589 in 2025.  WISCONSIN COURT SYSTEM, *Wisconsin Court of Appeals 2020 Annual Report* and *Wisconsin Court of Appeals 2025 Annual Report*, https://www.wicourts.gov/other/appeals/statistical.jsp (last visited June 30, 2026).

[6] *See ABKA Ltd. P'ship v. Board of Rev.*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (explaining that appellate courts do not address undeveloped arguments).

for an initial commitment under WIS. STAT. ch. 51: the individual is mentally ill, a proper subject for treatment, and dangerous. *Waukesha County v. J.W.J.*, 2017 WI 57, ¶¶18-20, 375 Wis. 2d 542, 895 N.W.2d 783. The review of a civil commitment order—determining whether the petitioner seeking recommitment has met its burden of proof to establish these three requirements—"presents a mixed question of law and fact." *Id.*, ¶15. This court will not overturn the circuit court's factual findings unless they are clearly erroneous. *Id.* Appellate courts will "accept reasonable inferences from the facts[.]" *Winnebago County v. Christopher S.*, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). Whether those facts satisfy the statutory standards, however, is a question of law that is reviewed de novo. *Marathon County v. D.K.*, 2020 WI 8, ¶18, 390 Wis. 2d 50, 937 N.W.2d 901.

¶21 With respect to dangerousness, the County must prove that the individual is dangerous under one or more of the five standards in WIS. STAT. § 51.20(1)(a)2.a-e. Wisconsin law provides five different definitions of "dangerous" in paragraphs a.-e. of § 51.20(1)(a)2. In addition, § 51.20(1)(am) provides that recommitment may be based on "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." The *D.J.W.* court held that a circuit court must "make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶40. That court also explained the "twofold" rationale behind this requirement. *Id.*, ¶42. "First, it provides clarity and extra protection to patients regarding the underlying basis for a recommitment." *Id.* Second, it facilitates judicial review, making it easier for appellate courts to determine whether there was sufficient evidence, for example, to support a particular type of

9

dangerousness. *See id.*, ¶44; *see also* ***Klinger v. Oneida County***, 149 Wis. 2d 838, 847, 440 N.W.2d 348 (1989) ("[T]he circuit court must make a record of its reasoning to ensure the soundness of its own decision making and to facilitate judicial review.").

¶22 It is not necessary for the circuit court—or witnesses—to recite "magic words" to substantiate a conclusion that sufficient facts had been established to commit an individual. *See* ***Outagamie County v. Melanie L.***, 2013 WI 67, ¶97, 349 Wis. 2d 148, 833 N.W.2d 607, *id.*, ¶¶110, 113 (Ziegler, J., dissenting); *see also* ***D.K.***, 390 Wis. 2d 50, ¶54 ("[W]e [do not] require witnesses or circuit courts to recite magic words."). A recitation of legalese incantations is not required. *See* ***D.K.***, 390 Wis. 2d 50, ¶54; ***Melanie L.***, 349 Wis. 2d 148, ¶97.

¶23 In this case, the circuit court found Jacob dangerous under WIS. STAT. § 51.20(1)(a)2.a. and b.,[7] and the "fifth standard," meaning § 51.20(1)(a)2.e. and § 51.20(1)(am). As our supreme court acknowledged in ***State v. Dennis H.***, 2002 WI 104, ¶¶15-16, 255 Wis. 2d 359, 647 N.W.2d 851, this

---

[7] WIS. STAT. § 51.20(1)(a)2.a. and b. provides:

> 2. The individual is dangerous because he or she does any of the following:
>
> a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.
>
> b. Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm[.]

"fifth standard" is "long and complex." The ***Dennis H.*** court broke it into five elements:

> First, a person … must be mentally ill. …
>
> ….
>
> … Second, the person … must be incompetent to make medication or treatment decisions, or … must be unable, "because of mental illness," to make "an informed choice as to whether to accept or refuse medication or treatment." … This must occur "after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her."
>
> … Third, the person must show a "substantial probability" that he or she "needs care or treatment to prevent further disability or deterioration." This must be "demonstrated by both the individual's treatment history and his or her recent acts or omissions."
>
> … Fourth, the person must evidence a "substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety."
>
> … Fifth, the person must evidence "a substantial probability that he or she will, if left untreated, … suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions."

*Id.*, ¶¶19, 21-24 (last omission in original; citations omitted).

¶24 In this appeal, while there may be some question as to whether the circuit court made sufficient factual findings as to WIS. STAT. § 51.20(1)(a)2.b.,[8] this court concludes that is not the case with respect to § 51.20(1)(a)2.a. and e.

¶25 With respect to WIS. STAT. § 51.20(1)(a)2.a.—dangerousness to self—the circuit court referenced Jacob's attempted elopement via a second-story window and stated it "ultimately creat[ed] harm - - substantial, severe bodily harm to himself." This was, evidently, the basis upon which the court signed off on § 51.20(1)(a)2.a. in the recommitment order. "[I]f a circuit court fails to make a finding that exists in the record, an appellate court can assume that the circuit court determined the fact in a manner that supports the circuit court's ultimate decision." *State v. Martwick*, 2000 WI 5, ¶31, 231 Wis. 2d 801, 604 N.W.2d 552. The attempted elopement, and resulting harm to Jacob, exists in the Record through Moore's testimony. Even without making that conclusion here,[9] this court concludes that there was sufficient factual basis for finding § 51.20(1)(a)2.e.

¶26 With respect to the first element of WIS. STAT. § 51.20(1)(a)2.e., the circuit court found that Jacob was mentally ill "based off of Dr. Vicente's

---

[8] The County "acknowledges that the circuit court did not make oral findings concerning [WIS. STAT. § 51.20(1)(a)2.b.], except insofar as the court found Dr. Vicente credible, and Dr. Vicente's Report of Examination, which was received into evidence, contained information relevant to [§ 51.20(1)(a)2.b.] as modified by the recommitment standard." This court agrees, but it is not necessary to resolve this issue as there were sufficient factual findings to support other standards. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (explaining that the appellate courts should decide appeals on the narrowest possible grounds); *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (explaining that when one issue is dispositive of an appeal, we need not discuss other issues).

[9] The County even conceded that "[s]imilarly, the circuit court did not articulate findings related to [WIS. STAT. § 51.20(1)(a)2.a.] as clearly as for [§ 51.20(1)(a)2.e.,]" but this court could make "a reasonable inference ... that this recent overt act was what led the circuit court to mark the 'substantial probability of physical harm to himself' box in the written order."

testimony with regards to the - - the specific mental illness diagnosis of [Jacob.]" Next, regarding the element of Jacob's competence to decide on medication or treatment, the court again referred to the doctor's testimony. Although it did not summarize that testimony in any detail, it found that Jacob was not able to express the requisite understanding on this issue. This suggests that the court adopted Vicente's opinion, as reflected in both his testimony and report, regarding Jacob's ability to appreciate the advantages and disadvantages of medication and treatment. *See Martwick*, 231 Wis. 2d 801, ¶31.

¶27 Moving on to the third and fourth elements of WIS. STAT. § 51.20(1)(a)2.e., the circuit court based its finding on "the testimony that was presented by Dr. Vicente that [the advantages, disadvantages, and alternatives to medication] had been expressed to [Jacob] and that [he] continues to express an unwillingness to accept his mental illness and accept treatment for that mental illness." Finally, regarding the fifth element, the court referred to both Vicente's and Moore's testimony that "[i]f left untreated, [Jacob] will suffer severe mental, emotional, or physical harm that will result in the loss of [Jacob]'s ability to function independent - - independently in the community or the los[s] of cognitive or volitional control over his - - his thoughts or actions."

¶28 The circuit court found the County's witnesses credible and explicitly identified the dangerousness definition in WIS. STAT. § 51.20(1)(a)2.e. In such a case, it is not necessary to "issue a complete compendium of all of the prior testimony." *See J.S.*, No. 2024AP1333, ¶17 (quoting *Winnebago County v. B.R.C.*, No. 2023AP1842, unpublished slip op., ¶19 (WI App Feb. 14, 2024)). The circuit court made a sound judicial decision and relied upon established sufficient facts. *See D.J.W.*, 391 Wis. 2d 231, ¶44. This court concludes that,

13

although—as the County concedes—the factual findings in this case certainly could have been more thorough, they were adequate.

## CONCLUSION

¶29 For the foregoing reasons, the orders regarding both Jacob's extension of commitment and involuntary administration of medication are affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.